

1  Joseph Johnson, Jr.,

2  #000580

3  P.O. Box 5003

4  Coalinga, CA 93210

5  Pro Se

6

7  **UNITED STATES DISTRICT COURT**

8  **NORTHERN DISTRICT OF CALIFORNIA**

9  **JOSEPH JOHNSON, JR.,**                    **Case No.: C 08 1088 SI**

10                  **Petitioner**                  **FIRST AMENDED**

11  **Vs.**                                        **PETITION FOR WRIT OF HABEAS**

12  **NORM KRAMER, DIRECTOR OF**              **CORPUS PURSUANT 28 U.S.C.§2254/**

13  **COALINGA STATE HOSPITAL et al;**         **2241(c)(3)**

14  **EDWARD FLORES-CHIEF OF SANTA**

15  **CLARA COUNTY DEPT OF CORRECTIONS;**

16  **JERRY E.BROWN-CALIFORNIA ATTORNEY**

17  **GENERAL.**

18  _____**Respondent**_____ /

19

20  **Read Comments Carefully Before Filing In**

21  When and Where to File

22  You should file in the Northern District if you were convicted and sentence in one of these counties: Alameda, Contra Costa, Del

23  Norte, Humboldt, Lake Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, San Francisco, San Mateo, and Sonoma.

24  You should also file in this district if you are challenging the manner in which your sentence is being executed, such as loss of good

25  Time credits, and you are confined in one of these counties. Habeas L.R.2254-3(a).

26          If you are challenging your conviction or sentence and you were not convicted and sentence in one of the above-named

27  Fifteen counties, your petition will be likely transferred to the United States District Court for the district in which the state court

28  that convicted and sentence you is located. If you are challenging the execution of your sentence and you are not in prison in one of

1    these counties, your petition will likely be transferred to the district court for the district that includes the institution where you are
2    confined. Habeas L.R. 2254-3(b)

3    ## Who To Name as Respondent

4        You must name the person in whose actual custody you are. This usually means the Warden or jailor. Do not name the
5    State of California, a city, a county or the superior court of the county in which you are imprisoned or by whom you were convicted
6    and sentence. These are not proper respondents.

7        If you are not presently in custody pursuant to state judgment against which you seek relief but may be subject to such
8    custody in the future (e.g., detainers), you must name the person in whose custody you are now <u>and</u> the Attorney General of the
9    state in which the judgment you seek to attack was entered.

10   **A.    INFORMATION ABOUT YOUR CONVICTION AND SENTENCE:**

11       1.    What sentence are you challenging in this petition ?

12          (a)    Name and location of court that imposed sentence(for example; Alameda County Superior Court,

13          Oakland): **Santa Clara County Superior Court, San Jose CA**

14         (b)    Case Number, if Known: **Santa Clara Co.Super.Ct. No.: 210431;Ct.of App.**

15         **No.:H029316.**

16          (c)    Date and terms of sentence: **two-year civil commitment**

17          (d)    Are you now in custody serving this term ? (Custody means being in jail, or parole or probation, etc.)

18         **Yes  X**                              **No ___**

19         Where ?

20         Name of Institution:  **COALINGA STATE HOSPITAL**

21         Address:    **P.O. Box 5003, Coalinga CA**

22       2.    For what crime were you given this sentence ?(If your petition challenges a sentence for more than one crime,
23   List each crime separately using Penal Code numbers if known. If you are challenging more than one sentence, you should file a
24   different petition for each sentence.) **: I was not sentence for a crime, this is a civil commitment under**
25   **California's Sexually Violent Predator Act Welfare and Institutions Code §6604**

26       3.    Did you have any of the following ?

27         Arraignment:/ Probable Cause     Yes   X        No ___

28         Preliminary  Hearing:            Yes   X        No ___

Motion to Suppress:                    Yes _____        No _X_

4.    How did you plead ?

Guilty _____    Not Guilty _X_    Nolo Contendere _____

Any other plea (specify) **Denied truth of petition**

5.    If you went to trial, what kind of trial did you have ?

Jury    XX    Judge alone _____    Judge alone on a transcript    _____

6.    Did you testify at your trial ?        Yes X        No __

7.    Did you have an attorney at the following proceedings:

(a)    Arraignment            Yes X        No ___

(b)    Preliminary hearing        Yes ___        No X

(c)    Time of plea            Yes X        No ___

(d)    Trial                Yes ___        No X

(e)    Sentencing            Yes ___        No X

(f)    Appeal                Yes X        No ___

(g)    Other post-convection proceeding Yes __    No X

8.    Did you appeal your conviction ?        Yes X        No ___

9.    Other than appeals, have you previously file any petitions, applications or motion with respect to the [current

proceeding] in any court, state or federal ?    Yes ___    No X

[Note: If you previously filed a petition for writ of habeas corpus in federal court

that challenged the same conviction you are challenging now and if that petition

was denied or dismissed with prejudice, you much first file a motion in the United

-3-

States Court of Appeals for the Ninth Circuit for an order authorizing the district court to consider this petition. You may not file a second or subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit.28 U.S.C.§§2244(b).]

**B.   GROUNDS FOR RELIEF:**

State briefly every reason that you believe you are being confined unlawfully. Give facts to support each claim. For example, what legal right or privilege were you denied ? What Happen ? Who made the error ? Avoid legal arguments with numerous care citation. Attach extra paper if you need more space. Answer the same questions for each claim.

[Note: You must present ALL your claims in your federal habeas petition subsequent petitions may be dismissed without review on the merits. 28 U.S.C. §§2244 (b); McCleskey v. Zant, 499 U.S.467, 111 S.Ct.1454, 133 L.Ed.2d 517 (1991).]

### STATEMENT OF THE CASE

1.      On April 25, 2002, a petition for recommitment was filed pursuant to Welfare and Institutions Code section 6604, seeking to extend petitioner's confinement from May 24, 2002 to May 24, 2004.

2.      On May 21, 2002, the probable cause hearing commenced.

In the month of January-March 2003, a motion was file by petitioner regarding that the court did not  have jurisdiction to the 2002-2004 petition , because the Director of Mental Health did not request a letter to the district attorney to have petitioner 2002-2004 petition file, pursuant to Welfare and Institutions Code § 6601 (d)-(e) et seq. Instead it was done by the local Atascadero State's Hospital's Medical Director Robert S. Knapp,(See attached request letter) and that the petition should be dismissed. The Superior Court Judge Alfonso Fernandez denied Petitioner's motion to dismiss. A writ of mandamus was filed in the Sixth District Court of Appeal seeking reversal that was denied by the Sixth District Court of Appeals, and review by the State's Supreme Court was also denied . Petitioner filed a writ of habeas corpus in this Court, but later ask that the petition be dismiss without prejudice to file at a later date in order to wait for all of the issues to be addressed by the inferior courts on direct appeal first.

3.      On June 27, 2003, the trial court found probable cause and ordered petitioner to trial on the petition. A jury trial was set for April 5, 2004.

1    4.    On February 17, 2004, another petition for recommitment for the period on May
2  24,2004 through May 24, 2006 was filed.

3    5.    On March 8, 2004, the district attorney filed a motion to consolidate the 2002-2004
4  and 2004-2006 petitions for trial.

5    6.    On April 2, 2004, the trial court consolidate the petitions and vacated the April 5,
6  2004 trial date as to the instant petition.

7    7.    On April 23, 2004, petitioner filed a petition for writ of mandamus in the Court of
8  Appeal seeking to reverse the order for consolidation. The Court of Appeal issued an Order to
9  Show Cause and stay on all proceedings on May 19,2004 (See Litmon, supra, 123 Cal.App.4th
10  1156, 1164 (Litmon).)

11    8.    On November 4, 2004, the Sixth District Court of Appeal granted petitioner's Writ
12  of Mandate finding that consolidation of the SVP petitions was inappropriate in this case. The
13  Court ordered the Superior Court to schedule trials on each petition.

14    9.    Petitioner briefed and argued Motion to Dismiss the First Petition on April 6,2005.
15  Petitioner argued that the first petition must be dismissed because it is moot. The intended
16  commitment period of May 24, 2002 through May 24,2004 had passed without a trial due to a
17  prejudicial delay by the court and the prosecution. Honorable Alfonso Fernandez denied the
18  motion . Trial on the first petition was scheduled for August 22, 2005.

19    10.    On June 1, 2005 a Writ of Mandate and /or Prohibition was filed in the Sixth
20  District of Appeals seeking to reverse Petitioners Superior Court denial decision of Motion to
21  dismiss Petition because of Moot.(H028873). The Writ was denied by the Sixth District of
22  Appeals.

23    11.    Petitioner subsequently filed a Writ of Habeas Corpus on June 30, 2005 for review
24  in the California Supreme Court alleging that a trial on the May 24, 2002 through May 24, 2004
25  recommitment petition would violate petitioners due process rights under the California's and the
26  United States Constitutions, because the recommitment petition is moot.

27    12.    On September 7, 2005, the California Supreme Court denied the Petition for relief
28  without comment (S135199).

-5-

13.     On August 15, 2005, the trial on the instant petition commenced, and continued for a total of nine days, through September 2, 2005, the jury found the allegations of the petition to be true.  An order of recommitment was entered by the trial court on September 6, 2005.

14.     On September 6, 2005, petitioner filed a timely notice of appeal.

15.     On October 17, 2007, the Court of Appeal affirmed the trial court's order of recommitment without addressing any of petitioners issues because of the petition being moot.

16.     On January 23, 2008 the California State Supreme Court denied petition for review(See Attached: S158324).

## ARGUMENT

17.     This petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254/§ 2241(c) (3) is the proper remedy for this Court to ascertain whether Petitioner was/is lawfully deprived of his State and United States Due Process and Equal Protection liberty rights.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      THE WELFARE AND INSTITUTIONS CODE AND CASELAW SPECIFY WHEN AND WHO REQUEST LETTER FOR PETITION TO BE FILED FOR COMMITMENT.

18.     Pursuant and According to Welfare and Institutions Code Section 6601 subdivision (d)- (h):

19.     (a).     (d) Pursuant to subdivision (c), the person shall be evaluated by two practicing psychiatrists or psychologists, or one practicing psychiatrist and one  practicing psychologist, *designated by the Director of Mental Health*. If both evaluators concur that the person has a diagnosed mental disorder or that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody, *the Director of Mental Health shall forward a request for a petition for commitment* under Section 6602 to the county designated in subdivision (i). Copies of the evaluation reports and any other supporting documents shall be made available to the attorney designate by the county pursuant to subdivision (i) who may file a petition for commitment.

-6-

20.    The statute indicates that the proceedings for a Petition to Extend Commitment are the same as an initial petition. *(People v. Butler* (2000) 78 Cal.App.4th 1171). Evaluators for the petition are to be designated by the Director of the Department of Mental Health and, when appropriate, the Director of the Department of Mental health should submit a letter to the district attorney requesting that a first petition be filed. Welfare and Institutions Code Section 6601 (c) to (i) describes a process by which the Director of the Department of Mental Health makes the first determination of which evaluators to assign to an individual petition and whether or not to recommend that a petition be filed. In Mr. Johnson's case, there is no indication that anyone other than the Medical Director Robert S. Knapp M.D.(Petitioner ask the Court to Please TAKE JUDICIAL NOTICE of the attached Letter of Request Exhibit "A") of Atascadero State local Hospital made the decision on who the designated evaluators should be, and request a letter for a petition to be filed on the first petition, nor any suggestion by the Director of the Department of Mental Health that a First Petition should be filed.  Similar to the impermissible activity of the Director of the Department of Mental Health in *Ghilotti,* the Medical Director of Atascadero State local Hospital here has bypassed a number of statutory procedures to produce a desired result. Finally, under subdivision (h) of section 6601, the Director "shall" forward a petition request to the appropriate county "[i]f the .. Department ... determines that the person is a sexually violent predator as defined in this article...." Copies of the evaluation reports and any other supporting documents shall be made available" to the county's attorney. (Ibid., italics added.)

21.    "The clear import of this scheme is that the Department's "determine[ation]" under section 6601, subdivision (h), is governed by the evaluation procedure described at length in subdivisions (c) through (g) of the same section. When subdivisions (c) through (h) of section 6601 are read together, they ascribe [27 Cal. 4th 907] the Director's authority as follows: Before requesting a petition, the Director must designate two mental health professionals to evaluate the person.

22.    If these two evaluators agree that the person meets the criteria for commitment, the Director must request a petition. If, however, these first two evaluators do not agree on this issue, the Director must arrange a further examination by two [44 P.3d 962] independent professionals. .

1     ... ."

2       23.    The general rule is that when a statute prescribes certain procedures, a trial court

3 has no power to act without the occurrence of those procedural prerequisites. (*People v. The*

4 *Superior Court of Contra Costa County (Whitley)* (1999)68 Cal.App.4th 1383,1387.); *(People*

5 *v.Superior Court (Marks)(1991) 1 Cal. 4th 56, 66, 2 Cal. Rptr.2d 389, 820 P.2d 613; see*

6 *Abelleira v. District Court of Appeal (1941) 17 Cal.2d 280, 288,109 P.2d 942.) (FN 3]* Thus it

7 has been held that when a statute establishes prerequisites for maintenance of a civil commitment

8 procedure, a trial court's jurisdiction or power to enter an order of commitment depends [68

9 Cal.App.4th 1388] on compliance with those prerequisites. (see, e.g., In re Raner (1963) 59 Cal.2d

10 635, 639, 30 Cal.Rptr. 16, 453 P. 2d 456 [CRC commitment invalid; noncompliance with

11 requirements for medical examination]. ) The rule has been applied to invalidate an extended

12 commitment of a defendant to a mental hospital under Penal Code section 1026.5 because contrary

13 to the statute, the proceedings were initiated by a petition filed several weeks after the expiration

14 of the defendant's existing commitment. *(People v. Pacini* (1981) 120 Cal. App. 3d 877, 891-892

15 & fn. 12,174 Cal.Rptr.820.)

16       24.    **In People v. Superior Court (Ghilotti),119 Cal.Rptr.2d 1, 27 Cal.4th 8 (Cal.**

17 **2002)** the California State Supreme Court ruled: "We agree with the superior court and the Court

18 of Appeals that this is not a plausible reading of the statute. 'To determine legislative intent, a

19 court begins with the words of the statute, because they generally provide the most reliable

20 indicator of legislative intent.' [Citation.] If it is clear and unambiguous our inquiry ends.  There

21 is no needs for judicial construction and a court may not indulge in it.

22 [Citation.] "If there is no ambiguity in the language, we presume the Legislature meant what it

23 said and the plain meaning of the statute governs.'[Citation.]"   (Diamond Multimedia Systems,

24 Inc. v. Superior Court (1999) 19 Cal.4th 1036, 1047, 80 Cal.Rptr.2d 828, 968 P.2d 539.)

25       25.    Here, the plain language of section 6601 and a response letter from the Chief Sex

26 Offender Commitment Program, Sylvia Blount of the California Department of Mental Health

27 (See attached Letter Exhibit "B"), stating that: *".. the Medical Director of Atascadero State local*

28 *Hospital (ASH) can represent and speak for ASH in that capacity, but does not represent the*

1   *Department's opinion nor does he speak for the Department when the statute calls for action by*
2   *the "Department" or the "Director of the Department." The final decision on whether or not to*
3   *proceed, and how to proceed, on any case, when the statute calls for action or decision by the*
4   *Department must be made by the Director of DMH."…… ."* governs.

5       26.     Subdivision (b) through (g) of section 6601 set forth the procedures, including the
6   concurrence of two mental health evaluators, by which [27 Cal,4th 906] the Department must make
7   the "determine[ation]" to which subdivision (h) refers.   Subdivision (h), in turn, refers to a
8   "determine[ation]" made by resort to those procedures, not in disregard of them.

9       27.     As in the original commitment process, section 6601, subdivision (c) through (h)
10  guide the Director of the DMH in screening potential SVPs. The requirements of these subdivision
11  may not simply be ignored. To do so would undermine the director's determination of which
12  person to refer for a petition for recommitment.   At minimum, absent any standards, the
13  Director's decision will be completely discretionary and could lead to unchecked abuse and
14  arbitrary results. In fact, here, the Director of the DMH did not designate the evaluators, nor did he
15  send a request letter to the district attorney referring Johnson for a recommitment petition to be
16  filed. It is highly unlikely the Legislature intended an arbitrary application simply because the
17  request was for an extended commitment as opposed to an original one. Absent a clear direction
18  from the Legislature that this was its intent, the court must reject this construction because it lasks
19  common sense, denies due process, and raises potential equal protection concerns. "We avoid this
20  interpretations and constructions which defy common sense or which might lead to mischief or
21  absurdity …" *Board of Retirement v. Santa Barbara County Grand Jury* (1997) 58 Cal. App. 4th
22  1185, 1189, 68 Cal.Rptr.2d 607.)( See also *People v. Superior Court (Gary),* 101 Cal.Rptr.2d 874,
23  85 Cal.App. 216).

24      28.     Petitioner contends that his Due Process and Equal Protection rights where violated
25  under the California's Statutory, Constitutional and United States Constitutional laws.

27      **II.    THE SVP ACT DOES NOT PROVIDE FOR A TRIAL ON A MOOT**
28              **PETITION WHERE THE DISTRICT ATTORNEY/COURT IS/WHERE**

1    **RESPONSIBLE FOR THE PRETRIAL DELAY**

2    A.    **The Trial Court Was Required To Dismiss The 2002-2004 Recommitment**

3    **Petition Because It Was Moot.**

4    (a).    **Introduction and Procedural Background**

5    29.    The prosecution's successful consolidation of this 2002-2004 petition with the

6    trailing 2004-2006 petition resulting in the original 2002-2004 petition trial date of April 5, 2004,

7    being vacated and reset to September 1, 2004, a date following the expiration of the 2002-2004

8    recommitment period. (*Johnson, supra*, 123 Cal.App.4th at p.1162.)

9    30.    In *Johnson,* the Court agreed with petitioner that the trial court erred in

10   consolidating the petitions over his objections, where the delay was solely for the purpose of

11   accommodating the prosecution's request for consolidation. *(Johnson, supra,*123 Cal.App.4th at

12   p. 1161, 1172-1179.)

13   31.    On March 9, 2005, with the Court of Appeal's order in place for separate trials,

14   petitioner filed a motion to dismiss the 2002-2004 petition on the ground that it was moot and

15   proceeding with it would deny him due process. (CT 263-274, 276; RT [Mar. 11, 2005] 3.)

16   32.    In so ruling, the trial court agreed with the prosecutor the *Johnson* court impliedly

17   rejected the mootness argument by not ordering *(sua sponte)* the instant petition dismissed, and

18   ordering separate trials instead. (T 294; RT [Apr. 6, 2005] 12.)   The Court of Appeal did not

19   adopt this reasoning. (Appendix, pp. 13-14.) Nevertheless, petitioner filed a Petition For Writ Of

20   Mandate And Or Prohibition (H028873) on June 1,2005 in the Sixth District Court of Appeal

21   challenging the Superior Court denial of his motion to dismiss the moot petition, it too was denied.

22   On June 30, 2005 petitioner filed a Writ For Review in the California Supreme Court challenging

23   the Superior and the Sixth District of Appeals Courts denial of his motion to dismiss. On

24   September 7, 2005 Petition for review was denied(S135199). On November 30, 2005 petitioner

25   filed a Petition For Writ of Habeas Corpus into this Court(C 05 4916 SI) later having it dismissed

26   without prejudice in order to have all of the issues addressed in the inferior courts at the same

27   time, and then bring them all before this Court.

28   33.    The Sixth Appellate District Court denied petitioner's direct appeal with the ruling:

-10-

1   *"However, because the commitment period at issue (2002-2004) has expired, we will*
2   *dismiss this appeal as moot"......" at p. 2.*

3   34.   The Sixth District Appellate Court in it's ruling on p.13-14 made an inaccurate
4   rendering of what actually transpired. The court stated: "... "Defendant, who at all times during
5   the writ proceedings in this court was represented by counsel, did not petition for rehearing of our
6   disposition  However, defendant filed a pro per petition for review in the California Supreme
7   Court arguing for the first time that because the 2002-2004 commitment period had already
8   expired, the recommitment petition was moot and must be dismissed because 'the SVPA does not
9   provide[] for determination of one's mental condition and dangerousness after the fact [and]
10  clearly the remedy should have been an order[] that all recommitment petitions be dismissed, and
11  Johnson be released forthwith." The Supreme Court denied review.

12  35.   Over defense objections of mootness, the trial court carried out our disposition and
13  defendant was given his trial on the 2002 petition. Now, on appeal from an unfavorable verdict,
14  defendant complains that he should never had a trial at all because, by the time the trial took place,
15  he had long since served the two-year recommitment period to which the 2002 petition pertained.

16  36.   Contrary to the Sixth District of Appeals rendering, on March 11, 2005, there was
17  a Motion to Dismiss the  petition for mootness filed on March 11,2005 in the Superior Court #41
18  Judge Fernandez . On June 1, 2005 there was a Petition For Writ Of Mandate And/Or Prohibition
19  filed in the Sixth District of Appeal Court(H028873).   Petitioner Pro Per Writ was filed on June
20  30, 2005 and denied on September 7, 2005 by the State Supreme Court(S135199 see attached)

21  37.   These filed Motions to Dismiss the Petition because of mootnees was filed
22  by petitioner  after the Sixth District Court of Appeal disposition to the Superior Court, and before
23  Petitioners 2002 petition trial held on August-September 2005.

24  **B.      Petitioner Was Entitled To Have the 2002-2004 Recommitment Petition**
25  **Dismissed by the Superior Court on Mootness Grounds, and Appeals Court**
26  **Erred in Concluding that an Underlying Moot Petition Renders the Appeal**
27  **On that and Other Issues Moot as Well.**

28  38.   Mootness is a judicial doctrine intended to remove cases from the court docket as

to which the "essential character" of the dispute or controversy between the parties cease to exist, such that the purpose for which one or the other party has sought judicial action ceases to exist. *(Wilson v. Los Angeles County Civil Service Com.* (1952) 112 Cal. App.2d 450, 453.)

39.   The mootness doctrine has resulted in decisions both affirming and vacating judgments previously entered.*(Wilson v. Los Angeles County Civil Service Com.* (1952) 112 Cal.App.2d at p. 453; *Pittenger v. Home Savings and Loan Assn.* (1958) 166 Cal.App.2d 32, 36-38; *Paoli v. California & Hawaiian Sugar Refining Corp.* (1956) 140 Cal. App.2d 854, 856-858.)

40.   Mootness also arises in the context of appeals and other special proceedings. (See, e.g., *People v. Cheek* (2001) 25 Cal..4[th] 894, 897-898 [SVPA appeal].)   An exception to the doctrine has developed for issues technically moot at the trial court but which constitute continuing controversies "capable of repetition yet evading review," thus compelling a need for a decision by the appellate court as to the matter formerly in controversy. *(Johnson, supra,* 123 Cal.App.4[th] a p.1176.) While the appellate court rule of mootness is similar to that applied in trial courts, it involves different considerations going beyond the interests of the parties in this case, allowing for an exception that does not truly exist at the trial court level.

41.   Regardless, the principle in force in all cases is that the function of the courts is to resolve real controversies.   (See *Hewitt v. Helms* (1986) 482 U.S. 755, 761 ["At the end of the rainbow lies not a judgment, but some action (or cessation of action) by the defendant that the judgment produces—the payment of damages, or some specific performance, or the termination of some conduct."].)      The factual predicate for mootness arises in a number of ways, including (1) the expiration of a time limit *(In re Application of Cothran* (1937) 24 Cal.App.2d 65, 66; *(Paoli v. California & Hawaiian Sugar Refining Corp., supra,* 140 Cal.App.2d 854, 856-868; (2) the action of the parties *(Neary v. Regents of University of California* (1992) 3 Cal.4[th] 273, 281-282; *Boccato v. City of Hermosa Beach* (1984) 158 Cal App.3d 804, 808-809; (3) the death of a party *(Dexter v. Superior Court of Los Angeles County* (1940) 15 Cal.2d 405, 405-406; and (4) the actions of the third parties *(Press v. Com. On Judicial Performance* (1989) 48 Cal.3d 226, 226).   Stated from the perspective of the SVP Petitioner, he seeks to win release prior to the expiration of the recommitment term and his interest ceases when the period in controversy expires. As

1  explained below, so, too, does the state's interest cease to exist. (see also *People ex rel. McKeon*

2  (1914) 168 Cal. 306; *In re Application of Cothran, Supra,* 24 Cal.App.2d at p.66 [habeas corpus

3  proceedings].)

4                **1.**     **There Was No Basis for a Continuing Controversy in this Case.**

5         42.       It is well established that each recommitment petition is distinct unto itself

6  because only a "current" mental disorder is relevant. (Sec. 6600, subd. (a) (3); *Butler v. Superior*

7  *Court* (2000) 78 Cal.App.4th 1171, 1180; *Albertson v. Superior Court* (2001) 25 Cal.4th 796, 802-

8  802; *People v. Merfield* (2007) 147 Cal.App.4th 1071 [Mentally Disordered Offender

9  proceedings].) Proving that the respondent "currently" suffers a mental disorder when the

10  recommitment period sought has already expired makes no logical sense. It is pointless and

11  prejudicial for him to prove he suffered a dangerous mental illness *at some point in the past* or that

12  he *was* likely to commit offenses if he had been released during that time. (RT [Apr. 6, 2005] 5.)

13  *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138 noted that each filing of a successive petition

14  commences a new round of litigation. *(Id.* At p. 1177.) Thus, proof of a prior recommitment

15  period is not an antecedent requirement for proof of a subsequent live recommitment petition. As

16  *Johnson* reaffirmed, very few events cause the trial court to ever lose jurisdiction of an SVPA

17  petition, short of negligence on the prosecution's part in failing to file a recommitment

18  petition prior to the expiration of the preceding one. *(Johnson, supra,* 123 Cal.App.4th at pp.

19  1170-11771, citing *People v. Hedge (1999)* 72 Cal.app.4th 1466, 1475-1477; *People v. Superior*

20  *Court (Ramirez)* (1999) 70 Cal.App.4th 1384, 1390; see also *Orozco v. Superior Court* (2004) 117

21  Cal.App. 4th 170, 178-179, cert. den (2004) 534 U.S. 1008; *People v. Ward* (2002) 97 Cal. App.

22  4th 631, 634-635; *People v. Superior Court (Butler)* (2000) 83 Cal.App.4th 951, 961-963.)

23         43.   Nor does a post-expiration hearing secure any important benefit to the defendant.

24  (See *Hubbart v. Superior Court, supra,* 19 Cal.4th at p. 1177 [respondent may petition at any time

25  for conditional release].) Prevailing on the first petition does not secure the respondent's

26  immediate release so long as a timely subsequent petition had been filed. (Sec. 6604; *People*

27  *v. Ward, supra, 97* Cal.App.4th 631, 633-634; *Orozco v. Superior Court, supra,* 117 Cal.App.4th at

28  p. 180.)

44.  While the ***Johnson*** court concluded that the various jurisdictional holdings (see ***Johnson, supra,*** 123 Cal.App.4th at p.1171) "effectively removed the threat of dismissal which, in both criminal and general civil cases, impels cases to trial or other resolution within specified time periods set either by statute or court rules" *(Id.),* this was in the sense of the trial court's retention of jurisdiction only. The doctrine of mootness is a different matter, and whether or not it serves to impel cases to trial in a timely fashion immaterial.

45.  Petitioner cited *People v. Merfield, supra,* 147 Cal.App. 4th 1071, for the proposition that when the "current" condition of the patient is no longer in issue due to the lapsing of the undedlying commitment period, the action is moot. (Supplemental Letter Brief (Apr. 12, 2007).)

46.  The Court of Appeal did not address the argument or distinguish the case.

47.  The Court of Appeal concluded that if no controversy existed because petitioner had fully served the underlying recommitment period, then the appeal was moot by the very same reasoning.  To the extent the court drew this reasoning from *Merfield,* petitioner submits that *Merfield* should be disregarded. (Court Opinion, p. 14 ["[F]urthermore, he has already had the trial which he says he should not have had."].)  The Court of Appeal's reasoning is erroneous and has potential adverse consequences if adopted in future cases. The court ignores petitioner's key argument that being subject to jeopardy as a result of a purposeless trial, including all of the collateral consequences such as self-incriminating testimony and orders to pay attorney fees, is the reason why a moot petition should be dismissed before the trial commenced.

48.  Petitioner contends that his Due Process and Equal Protection rights where violated Under the California Statutory and Constitutional, and the United States Constitutional laws.

**III.   BY ALLOWING THE CASE TO PROCEED TO TRIAL ON A MOOT PETITION THE TRIAL COURT DENIED PETITIONER HIS RIGHTS TO DUE PROCESS AND SUBSTANTIVE DUE PROCESS.**

49.  Petitioner advanced a substantive due process argument which claims that proceeding to trial on a moot SVPA petition is fundamentally unfair to the Petitioner because no legitimate governmental interest is advanced by a trial on such a petition,  while simultaneously

1   there are advance collateral consequence to him. In addition, the failure of the trial court to ensure

2   what amounts to a speedy trial right prejudices petitioner's ability to seek release within the only

3   time period relevant to such analysis, namely, the commitment period sought in the underlying

4   petition. This combination renders such proceedings unconstitutional. *(Foucha v.Louisiana* (1992)

5   504 U.S. 71, 80; *Zinermon v. Burch* (1990) 494 U.S. 113, 125]; *Daniel v. Williams* (1986) 474

6   U.S. 327, 331; U.S. Const. 5th, 14th Amds.; Cal. Const, Art 1, sec 7 (a); see also *Zachary v.*

7   *Superior Court* (1997) 57 Cal. App.4th 1026, 1035.) The Court of Appeal failed to address this

8   question, finding only that if there were an arguable claim on this point, it did not need to be

9   addressed in the appeal because the issue did not affect the public interest and was unlikely to

10  recur in the future. (Court Opinion, p. 15.)

11      50.    Petitioner notes that the constitutional analysis for application the and state right to

12  a speedy criminal trial relates strictly to delay and the party primarily responsible, employing a

13  four-factor, balancing test involving the length of the delay, the reason for the delay, the

14  defendant's/petitioner's assertion of his right to be brought to trial, and the prejudice caused by

15  the delay. *(People v. Hill* (1984) 37 Cal.3d 491, 496.)

16      51.    Unlike the *Orozco* situation, when the respondent is prepared to complete trial prior

17  to the expiration of the commitment period as here, his due process claim must be granted when

18  the only action preventing completion of the trial is that of the prosecution is seeking a motion to

19  consolidate and the trial court in erroneously granting that motion.   Thus, the State must be

20  deemed to have forfeited the right to litigate the issues of a petition that has become moot, for

21  whatever reason. *Zachary v. Superior Court, supra,* 57 Cal.App.4th 1035-1036.)

22      52.    "Due Process calls for an individual determination before some one is locked

23  away" *Demore v. Kim,* 538 U.S. 510, 551, 123 S.Ct. 1708, 155 L.Ed. 2d 724 (2003) that has not

24  happen in this case. The procedural due process Petitioner was due in this case, was that he be

25  afforded the opportunity to defend against the extended 2002-2004 re- commitment petition before

26  the two year re-commitment petition term expired, and to his freedom if such allegations were

27  found not true.

28

53.    The point is not to establish that the prosecution lacks justification for its failure to proceed expeditiously in order to find that the petitioner's competing liberty interest outweighs the interests of the state. Rather the point is that the state's interest simply ceases to exist once the period expires.

54.    Due Process not only affords procedural safeguards to protect interests, but likewise protects substantive aspects of Petitioner's liberty against impermissible government restrictions. *Kelly v. Johnson,* 96 S Ct.1444 (1976).   Substantive due process concerns limits on governmental conduct toward an individual regardless of the procedural protections.

55.    The United States Supreme Court has enunciated two tests by which substantive due process is examined.

56.    First, Petitioner must prove that the governmental conduct shocks the conscience, that is, the acts alleged to have violated substantive due process, must do more than offend some "fastidious squeamishness or private sentimentalish," *Sanchez v. University of Connecticut Health Care,* 292 F. Supp.2d 385(2003) but must be such as to offend even hardened sensibilities, or be offensive to human dignity.

57.    Petitioner contends that his case meets this test, because he had/has been not only detained for over three years without a trial on the merits of whether he continues to be an SVP, in need of appropriate treatment and custody from May 2002 to May 2004, and the fact that he had a trial eighteen months after the expiration of the two-year term on a moot petition. There can be no question that such detention has denied Petitioner the right to defend against allegations after the fact, that he is an SVP, and has subjected him to oppressive and punitive incarceration without due process. This abuse of governmental power is shocking and violates the basic fundamental values of American Society, that when an individual is subjected to deprivatory governmental action they are always entitled to fair and unprejudicial decision making, and are always treated with respect and dignity. *People v. Ramerez,* (1979) 25 Cal.3d 260, 268.

58.    Under the U.S. Supreme Court's second substantive due process test, Petitioner must prove that an identified liberty interest protected by the *Fourteenth Amendment* has been violated.(Please see arguments 49, 66 & 68 for relevant answers)

-16-

**1.    THE MOOT PETITION IS NOT PROVIDED FOR BY THE SVPA.**

59.    Although the Welfare and Institutions Code Section 6601 and 6604 give clear guidelines on the process by which original and subsequent petitions are to be filed, neither statute allows for a trial on a moot petition. In relevant part Welfare and Institutions Code section 6601 (2)(d) provides: ",,,If both evaluators concur that the person has a diagnosed mental disorder so

> that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody, the Director of Mental Health shall forward a request for a petition for commitment under Section 6602 in the county designated in subdivision (i). Copies of the evaluation reports and any other supporting documents shall be made available to the attorney designated by the county pursuant to subdivision (i) who may file a petition for commitment."

60.    (a)    Welfare and Institutions Code section 6604 provides:

> "...If the court or jury determines that the person is a sexually violent predator, the person shall be committed for two years to the custody of the State Department of Mental Health for appropriate treatment and confinement in a secure facility designated by the Director of Mental Health and the **person shall not be kept in actual custody longer than two years** unless a subsequent extended commitment is obtained from the court incident to the filing of a petition for extended commitment under this article or unless the term of the commitment changes pursuant to sub-division (e) of Section 6605 (emphasis added).

61.    The procedural requirements in the SVPA must be followed and there are no procedures for proceeding on a moot petition.  In ***People v. Gary*** (2000) 85 Cal.App.4th 207, the district attorney asked the court to require  only one evaluator's report in order to file a recommitment petition. The Petitioner also requested that the court use common sense rather than apply the established rules of statutory construction in reviewing section 6604. In rejecting the Petitioner's argument the court said:

> The court's role is construing a statute is to 'ascertain the intent of the

1  Legislature so as to effectuate the purpose of the law.' In determining
2  the Legislature's intent, a court looks first to the words of the statute.
3  'It is the language of the statute itself that has successfully braved the
4  legislative gauntlet.'

6  When looking to the words of a statute, a court gives the language its usual,
7  ordinary meaning. {Citations] If there is no ambiguity in the language, we
8  Presume the Legislature meant what it said and the plain meaning of the
9  Statute governs. [Ciataions]. (*Id* at p.213 citing *People v. Snook*(1997)16 Cal.
10  4th 1201, 1215.)

12  …We cannot rewrite the statute to conform to the People's notion of what
13  the Legislature intended. ( *Gary* citing *Hofer v. Young* (1995) 38 Cal.App.4th
14  52, 57; rewriting of a statute is a legislative, not a judicial, prerogative) Nor
15  can we simply ignore the language used in attempting to determine what the
16  Legislature intended since we are bound by the doctrine of state decisis to first
17  Look to the words of the statute. (*Gary* at p. 213-14).

18  62.  Here, the clear words of the statute provide for the filing of an initial commitment
19  petition and the filing of a recommitment petition close in time to the termination of a previous
20  commitment. Thus, the legislature intended that the trial on recommitment petitions occur within
21  two years.

22  63.  Each petition under the SVP Act is to be treated separately and litigation of each
23  petition should be completed within two years. "Under California law, a new petition to extend an
24  offender's commitment for another two years constitutes a new and separate civil action…
25  California courts themselves recognize the lack of any collateral consequences from a two-year
26  commitment order under the SVPA by holding that the expiration of an SVP's term of
27  commitment renders any claims related to that commitment moot."    *(Burris v. Hunter*  (2003)

28

-18-

290 F. Supp.2d 1097, 1101.) Nothing in the statute permits the trial on petition that is moot due to delays by the prosecution.

IV.       **THE PROSECUTION CAUSED THE PRETRIAL DELAY AND VOLATED MR.JOHNSON'S RIGHT TO DUE PROCESS.**

64.      Where an alleged SVP is responsible for unnecessary delay in proceedings resulting in the expiration of the proposed two-year commitment prior to trial, courts have found that the Superior Court does not lose jurisdiction to proceed. *(Orozco v. Superior Court* (2004) 117 Cal.App.4th 170; *People v. Superior Court(Ramirez)* (1999) 70 Cal.App.4th 1384, 1389-1391.) However, Petitioner submits that no court has decided what the remedy may be if the prosecution, and not the alleged SVP, is responsible for the fatal delay. History shows that courts have been unwilling to reward the party that caused the delay. The court have been responsive to correcting the denial of constitutional rights as is present in this case.

65.      According to the Sixth District Appellate Court in *Johnson:*

"The SVPA is designed to ensure that continued confinement of an SVP is justified, if at all, at least every two years." (*Johnson* at p. 1176.) "…viewed as a whole, the SVPA clearly contemplates that a probable cause hearing and a trial on each and every petition to extend an SVP's commitment will occur every two years. It explicitly provides that courts *'shall order* that a trial be conducted' on the merits of every petition to recommit a person as an SVP (Section 6602)and further provides that the person *'shall not be kept in actual custody longer than two years* unless a subsequent extended commitment is obtained from the court incident to the filing of a petition for extended commitment…'"(Section 6604.) (*Johnson* at p. 1175.) "Nevertheless, we believe that every effort consistent with existing statutory law must be made to bring SVP petition to trial expeditiously and certainly well before the expiration of the very two-year commitment period at issue in the trial." (*Johnson* at p.1172.)

66.      The United States Supreme Court has found that "at the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *(Jackson v. Indiana* (1992) 406 U.S. 715, 738; See also *McNeil  v.*

1  *Director, Patuxent Institution,* (1972) 407 U.S. 245,250). Because Mr. Johnson cannot be held in
2  custody longer than two years during a commitment, it certainly follows that Mr. Johnson cannot
3  be held longer than two years without a trial on the merits.

4      67.    Unlike in *Orozco* and *Ramirez,* in this case, it was the People and not this
5  Petitioner who was responsible for the delay in the case.  Petitioner was ready for trial in March,
6  2004, and the trial should have been concluded prior to the May 24, 2004 expiration date. Without
7  statutory authority, the petition is improper and must/should had been dismissed. To do otherwise
8  would/has  violated Petitioner's due process rights under the California and United States
9  Constitutions.

10          **V.    PETITIONER WAS DENIED DUE PROCESS OF LAW**
11              **WHEN HIS FIRST TRIAL WAS CONTINUED TO**
12          **ACCOMMODATE CONSOLIDATION AND TO PROCEED**
13          **ON THIS PETITION HAS VIOLATED DUE PROCESS.**

14      68.    The state and federal constitutions prohibit the state from depriving Mr. Johnson of
15  his liberty without due process of law.  There can be no question that Mr. Johnson has a liberty
16  interest in avoiding confinement in a mental hospital.  Due Process requires that the nature and
17  duration bears some reasonable relation to the purpose for which Mr. Johnson is detained.
18  *(Jackson* at p.738).  In addition, because Mr. Johnson is a civil detainee, he is entitled to greater
19  protection than persons under criminal process. *(Youngberg v. Romero* (1982) 457 U.S. 307;
20  *Jones v. Blanas*  (2004) 393 F.3d 918).  If an individual detained under criminal process must be
21  provided an opportunity to defend against criminal charged at a meaningful time, it certainly
22  shocks the conscience to detain Mr. Johnson for over thirty-eight (38) months, a civil detainee
23  who is not charged with a crime, for the entire two-years commitment  term and some without a
24  trial on the merits. This amounts to impermissible oppressive and punitive incarceration.

25      69.    Mr. Johnson is entitled to a trial at a "meaningful time and in a meaningful
26  manner." *(Mathews v. Eldridge* (1976) 96 S.Ct. 893.)    That time was April 5, 2004- when both
27  parties announced ready and the trial was set prior to the termination of the proposed commitment.

28

-20-

1   In *Johnson,* the Sixth District Appellate Court indicated that "the sole remedy that we can afford
2   these petitioners is to direct the trial court to immediately schedule trials on the earlier petitions…"
3   *(Johnson* at p. 1177.); however, the superior court should not proceed on the moot petition, and
4   the Sixth District Appellate court should had heard petitioner's (Writ H028873 filed on June 1,
5   2005)and ruled to dismiss the petition for mootness. The issue of whether a superior court can
6   proceed on a moot petition was not before the court of appeal when it decided whether
7   consolidation of petitions was appropriate. The language of *Johnson* indicates the court may have
8   identified and struggled with that issue.

9       70.    For example, the court clarified the "…delaying trial on a recommitment petition
10  beyond the two years of the underlying commitment term does not violate the SVP's due process
11  rights **where the SVP or the SVP's attorney is responsible for the delays."** *(Johnson* at p.1171
12  citing *Orozco v. Superior Court* (2004) 117 Cal.App.4th 170, 179-180.) The court left unanswered
13  the issue of remedy where the People intentionally caused the delay. It stands to reason that if the
14  People caused the delay, proceedings on a moot petition violates Petitioner's right to due process.
15  No one can take advantage of his own wrong. (California Civil Code Section 3517.) Petitioner's
16  Motion to Dismiss should had been granted by both inferior courts.

17               **VI.   PETITIONER WAS PREJUDICED BY THE PEOPLE'S**
18                   **SUBSTANTIAL DELAY IN THE TRIAL ON THE FIRST**
19                          **MOOT PETITION.**

20      71.    The First(2002-2004) Petition was intended to evaluate whether Petitioner met the
21  SVP criteria in April,2004, the time upon which the trial was to be heard. To simply go forward
22  with the trial would/has prejudice Mr. Johnson.  There is no way to determine what the result of a
23  trial in April 2004 would have been. There is no way to return to April 2004 when we were at the
24  time in June-August-September 2005.  The Real Party in Interest's action caused the delay and
25  there is no legal remedy to turn back the clock. Further, Petitioner had argued in his June 1,2005
26  Writ to the Sixth District Appellate court(See H028873 p.15) that he would have no right to appeal
27  any decision by the superior court on the moot petition. It was not the superior court's

28

1     responsibility to decide or preside over a case where a jury *decides* this irrecoverable issue that

2     provides neither side with "effectual relief." *(Estate of Rule* at p. 10.)

3         72.     *Johnson* consequently has suffered prejudice, i.e., over thirty months of

4     unauthorized confinement as a civil detainee in punitive conditions in the Santa Clara County Jail,

5     and in a state mental hospital without a trial, prior to going to trial on a year and a half expired

6     'moot' petition for recommitment, followed by continued unauthorized confinement to date.

7     Moreover, the court and the prosecution was the caused of this delay. Under these circumstances,

8     the inferior courts erred in denying *Johnson's* motion to dismiss the petition. *Zachary v.*

9     *Superior Court* 67 Cal. Rptr.2d 532, 57 Cal.App.4th 1026 (Cal. App. 3 Dist. 1997). It would stand

10     to reason, were the trial court to balance the alleged danger to the public against the prejudice to

11     the committed person when a petition for extended commitment is belatedly filed, the requirement

12     of conducting the trial prior to expiration of the commitment would be effectively vitiated. Were

13     in this case *Johnson* was held during the whole two-year recommitment period without a trial on

14     the merits, and the eighteen (18) months after to two-year petition becomes moot because of delay

15     by the court and the prosecution decision to consolidate petitions, they take *Johnson* trial on a

16     moot petition that's eighteen months old from the two-year term.

## VII.    PETITIONER WAS DENIED EQUAL PROTECTION
## UNDER THE LAW.

19         73.     By treating Petitioner differently form other civil detainees, Petitioner has been

20     denied equal protection under the California and United States Constitutions laws. "Equal

21     Protection does not require that all persons be dealt with identically, but it does require that a

22     distinction made have some relevance to the purpose for which the classification is made."

23     *(Baxtrom v. Herold* (1966) 383 U.S. 107, 111.) "The Equal Protection issue is whether actual

24     distinctions in the statutory classes realistically justify disparity in treatment under the appropriate

25     standard of review." *(In re Hoffman* (1986) 42 Cal.3d 552, 561.)

26         74.     The first prerequisite to meritorious claim under the equal protection clause is

27     showing that the state has adopted a classification that affects two or more similarly situated

28     groups in an unequal manner.*(In re Eric J* (1979)25 Cal.3d. 522, 530; *People v. Buffington*

(1999) 74 Cal.App.4th 1149, 1155.)

75.    The courts have used both a rational basis test and a strict scrutiny test when evaluating equal protection claims. "If a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relationship to some legitimate end." *Romer v. Evans* (1996) 517 U.S.620.) If distinction does burden a fundamental right, the state must demonstrate that the distinction is both a necessary and narrowly tailored attempt to achieve a legitimate goal. *(Zablocki v. Redhail* (1978) 434 U.S. 374.)

76.    The procedure employed in this instant case distinguished Petitioner from other potential SVP's. The distinction created bears no relationship to a legitimate purpose, and as such does not survive either a strict scrutiny or a rational basis analysis. Request Letter to have a petition filed by any one other than the Director of the California Mental Health Department, and substantially delaying a trial date to accommodate consolidation are not legitimate purposes.

77.    The statute sets out the required procedures for who to request for filing of the petitions and for the timely disposition. All Petitioner's/Respondent's to the petition have the right to have these procedures followed, and a right to a jury trial. As Petitioner was denied his statutory procedural rights, and denied his right to a trial at a meaningful time and in a meaningful manner, he was denied equal protection under California and the United States Constitutions. Further, Mr. Johnson has been denied his right to direct appeal the superior court's orders such as transporting him to Atascadero State Hospital to await trial on this moot petition, and releasing confidential, medical records to the district attorney over Petitioner's objection, not able to have his issues addressed by the Sixth District appeals court on direct appeal. There has been and will continue to be no ability to challenge these superior court orders because the First Petition is moot.

78. *Johnson* further contends that SVPA violates his Equal Protection rights under the Fourteenth Amendment of the United States Constitution, and Article I, Section VII of the California Constitution by his incarceration without limitations on when a trial should be held.

79.    The concept of equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment. *(In re Gary W.* (1971) 5 Cal.3d 296, 303) The first prerequisite to a meritorious claim

1  under the equal protection clause is a showing that the state has adopted a classification that

2  effects two or more similarly situated groups in an unequal manner. *In re Eric J.*(1979) 25 Cal.3d

3  522, 530; *People v. Buffington,* (1999) 74 Cal.App.4th 1149, 1154. The initial inquiry is not

4  whether persons are similarly situated for all purposes, but "whether they are similarly situated for

5  purposes of the law challenged." *People v. Gibson,* 204 Ca.App.3d 1425, 1438.

6      80.    ***Johnson*** contends  that he is similarly situated for purposes of the law with persons

7  under Not Guilty By Reason of Insanity (NGI)-Penal Code Section 1026; Mentally Disordered

8  Offender Law (MDO)-Penal Code Section 2972; Lanterman-Petris-Short Act-Welfare and

9  Institutions Code 5300.  For example, under the SVPA after probable cause is found the Act

10  simply states that a trial  must be ordered.*(W&IC.§6002),* however, all other  civil commitment

11  schemes mandate that a trial be conducted within a prescribed period of time. For example:

12          a). NGI-P.C. § 1026.5 (b)(4) requires that persons be provided a trial "no later than

13              30 calendar days prior to the time the person would other wise have been

14              released, unless that time is waived by the person or unless good cause is

15              shown ."

16          b). MDO-P.C. § 2972(a) requires the trial to "commence no later than 30 calendar

17              days prior to the time the persons would otherwise have been released, unless

18              the time is waived by the person or unless good cause is shown."

19          c). LPSA-W&CI. § 5303, "If no decision has been made within 30 days after the

20              filing of the petition, not including extensions of time requested by the

21              person's attorney, the person shall be released."

22      81.    There is a presumption that the Legislature enacts exactly what it intended and any

23  perceived omission is intentional.   The California Supreme Court noted in *California Fed Saving*

24  *& Loan v. City of Los Angeles,* (1995) 11 Cal. 4th 342, 349 that since the legislature knows how to

25  created an exception, and not do so, it must be assumed that omission was intentional.

26      82.    Since, the legislature did not provide for strict procedural limitation on how long a

27  potential SVP can be held pending a trial, it must be assumed that any punitive or oppressive

28  incarceration resulting from such lack of procedures was intended.

83. The United States Supreme Court has held that, "involuntary commitment statutes [will be upheld] provided the confinement takes place pursuant to proper procedural and evidentiary standards." *Kansas v. Hendricks,* 117 S.Ct. 2072 (1997); *Foucha v. Louisiana,* 504 U.S. 71, 80(1992) The Fourteenth Amendment states that: *"No State shall make or enforce any law which shall abridge the privileges of immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or proper, without due process of law;nor deny to any person within its jurisdiction the equal protection of the laws."* Article I, Section Vii of the California Constitution in similar fashion states that: *"A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the law."*

84. The Legislature has stated that the SVPA has no punitive purposes, yet it lacks the strict procedural limitations necessary to prevent the kind of punitive and oppressive incarceration *Johnson* has experienced, while all other civil schemes protect persons from such incarceration. *Johnson* contends that the lack of such limitations is clear indication the legislature intended to treatment *Johnson* differently than other similarly situated persons who are involuntarily committed, but have strict procedural requirements to prevent punitive and oppressive incarceration. Thereby, *Johnson* contends that such unequal treatment violates his equal protections rights under the United States and California Constitutions.

85. The prejudice to Mr. Johnson has and is continuing to escalate.

86. For example, the 2004-2006 extended petition was filed without the W&IC.§6604.1 statutory procedural prerequisites, which states in pertinent part:

**§6604.1. Commencement of term of commitment**

*"(a).      The two-year term of commitment provided for in Section 6604 shall commence on the date upon which the court issues the initial order of commitment pursuant to that section. The initial two-year term shall not be reduced by any time spent in a secure facility prior to the order of commitment. "<u>For any subsequent extended commitment, the term of commitment shall be for two-years commencing from the date of the termination of the previous commitment."</u>*

87.    There was an acknowledgement by the Sixth District Appellate in their decision, that Petitioner had not had a trial on his 2002-2004 petition when the district attorney filed the 2004-2006 petition:

***On February 17, 2004, while the first recommitment petition was still pending, the People filed a second recommitment petition to extend Johnson's commitment for another two years, until May of 2006, alleging that Johnson's "current commitment" was due to expire on May 24, 2004, evne though no commitment trial had yet been held.( see 21Cal.Rptr.3d 21,123 Cal. App.4th 1156 Litmon/Johnson v. Superior Court, (Cal.App. 6 Dist. 2004 at p. 6.)***

88.    Now, the district attorney has went even further by disregarding the W&IC §6604.1 and filed a 2006-2008 extended petition even though no commitment trial had yet been held on the 2004-2006 extended petition which also expired over Mr. Johnson's objection to a continuance and or consolidation of the 2004-2006 and 2006-2008 petitions.

89.    Mr. Johnson was denied a trial on each of or consolidations of these two petitions and sentence to an indeterminate term retroactively to his 2000-2002 initial petition which now and has been pending in the Ninth Circuit Court of Appeals on Writ of Habeas Corpus for almost over two-three years now.

90.    Petitioner's non trial indeterminate sentence was predicated on the "Jessica Law, S.B.1128,and "Proposition 83", allegedly allowing the court to retroactively go back to Mr. Johnson's initial 2000-2002 petition commitment and resentence him to an indeterminate "life term" sentence.

91.    Notwithstanding the fact that in the Sixth District of Appeals decision in the ***Johnson*** consolidation case they ruled:

*"Although we are convinced that trial courts have the inherent power to consolidate recommitment petitions, we are also convinced that, unless an [123 Cal.App.4th 1176] SVP consents to it, resort to consolidation should rarely  **\*35**  be necessary.  If a recommitment petition is tried at or near the commencement of the commitment period to which it relates, there will be no overlapping petition and thus no need for consolidation.  If, for some compelling reason, the first recommitment petition cannot be tried before a second recommitment petition is also ready to*

1  *be tried by both sides, it may well be that consolidation does not violate this legislative intent.*

2  *However, when the trial on the earlier petition can be held within the two-year commitment period*

3  *to which it relates, and the SVP has announced ready for trial and has objected to consolidation*

4  *or a continuance, consolidation appears to be at odds with the legislative intent codified in the*

5  *SVPA. The SVPA is designed to ensure that the continued confinement of an SVP is justified, if at*

6  *all, at least every two years. The legislative scheme's emphasis on frequent justification for the*

7  *confinement of each SVP demands that an SVP not be confined without an adjudication of the*

8  *justification for that confinement, solely because judicial resources will thereby be conserved.*

9  *Furthermore, under such circumstances, a continuance of the trial on a prior petition in*

10  *order to join it with a later petition would not only be inconsistent with the procedures mandated*

11  *by the SVPA, but also would fail to solve the problem of delay. In our view, permitting a policy of*

12  *liberal consolidation of recommitment petitions may tend to encourage delay, not reduce it.*

13  *We therefore hold that because the SVPA evidences a legislative intent to provide a trial*

14  *on every filed recommitment petition as close in time to the expiration of the prior commitment as*

15  *practicable, it is error to order consolidation over objection when a consolidated trial can occur*

16  *only if the earlier petition is further delayed.*" **Litmon/Johnson v. Superior Court**,21 Cal.Rptr.3d

17  21, 123 Cal.App.4th 1156, (Cal.App.6 Dist.2004)(at p. 21-22).

18  92.  The superior court allowed the district attorney to consolidate the 2004-2006,2006-

19  2008 petitions over Petitioners objection and any continuance, and both parties had agreed to a

20  previous trial date, and had more than enough time to have a trial on the first 2004-2006 petition.

21  93.  On page 14 of the sixth district of appeals court ruling, they ruled in pertinent part:

22  *".... "Moreover, defendant's current confinement is not related to the 2002 petition pertained;*

23  *furthermore, he has already been tried on the consolidation petitions for the period from 2004 to*

24  *2006 and 2006 to 2008, and is currently confined in a state hospital pursuant to court's June 29,*

25  *2007 order adjudging him a sexually violent predator. An appeal from that order is pending.*

26  94.  On page 15 of the sixth district of appeals court, they ruled in pertinent part :

27  *"... "We see no likelihood that the situation of which defendant now complains will be*

28  *repeated on a statewide basis. If such repetition does occur, we may decide at some future time*

1    *that moot trials in SVP cases raise issues of statewide importance that are capable of repetition*
2    *yet evade review. "*

3         95.    In *Hubbart v.Knapp,* 379 F.3d 773 (9th Cir. 2004), controls as to whether *Johnson's*
4    appeal in moot. There, the State argued that *Hubbart's* claim that his commitment under the
5    SVP Act violation his constitutional rights was moot because *Hubbart* petitioned for habeas relief
6    for his initial term of confinement, which had expired. That Court held that *Hubbart's* petition
7    was not moot because his claims were capable of repetition yet evading review. See Id at *1072
8    777-78 (noting that a two-year commitment under the SVP Act is too short a time for the validity
9    of the commitment to be fully litigated). The Court went on to say: "We stated that an action is
10    capable of repetition yet evading review when: "(1) the challenged action [is] in its duration too
11    short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable
12    expectation that the same complaining party [will] be subject to the same action again." *Id.* At
13    777(citation and internal quotation marks omitted). In this case, like, *Johnson* can show that the
14    claim in his habeas petition challenging the validity of his May 2000 civil commitment is and has
15    capable of repetition yet evading review: in June 2007, *Johnson* was recommitted to an
16    indeterminate commitment without a trial as an SVP, which subjected him to a life term in a
17    mental hospital.

18         96.    ***Johnson's*** asserts challenges only his May 2002-2004 civil commitment
19    proceedings, that if the Court conclude that the state court's finding of "due process and equal
20    protection" at the September 5, 2007 moot petition trial and appeal was unconstitutional, then
21    *Johnson's* June 2007 hearing would also be unconstitutional. Put another way, if the Court finds
22    *Johnson's* due process argument persuasive, the Court can strike both the 2002-2004 moot petition
23    civil commitment and the June 2007 re-commitment, and relieve *Johnson* from the additional re-
24    commitment requirements placed on an potential SVP. Accordingly, *Johnson's* appeal is not moot
25    because the Court could grant him relief. *Carty v. Nelson,* 426 F.3d 1064(C.A.9 (Cal.) 2005 at p.
26    16; *Jackson v. California Dept. Of Mental Health*, 399 F.3d 1069(C.A. 9(Cal.) 2005).

27         97.    Here, by contrast, ***Johnson's*** initial SVPA term expired *before* he brought his
28    federal habeas petition. When the district court first considered his case, ***Johnson*** was no longer

confined under the order he claims the state lacked jurisdiction to enter. The relevant question is not whether *Johnson's* challenge became moot at some point, but whether he had standing when he brought it.

98.     Standing and mootness are similar doctrines: Both require some sort of interest in the case, and both go to whether there is a case or controversy under Article III. Yet, the doctrines have important **\*1073** differences. "Standing doctrine functions to ensure ... that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake." *Friends of the Earth,* 528 U.S. at 191, 120 S.Ct. 693. Mootness issues arise later in the case, when the federal courts are already involved and resources have already been devoted to the dispute. *See id.* at 191-92, 120 S.Ct. 693. The Supreme Court has therefore been willing to recognize exceptions to mootness that do not apply to standing. Most important among these is the exception we applied in *Hubbart* for cases that are capable of repetition, yet evading review. This exception is not applicable to the standing question we address here: "[I]f a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum." *Id.* at 191, 120 S.Ct. 693. Accordingly, we must determine whether *Johnson* had standing to raise his claim in the first place.

99.     Before the Court consider the merits of Johnson's petition, the Court must decide whether it presents a case or controversy under Article III of the Constitution. See *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). Article III imposes two important limitations on the type of interest that a litigant must have for a federal court to adjudicate his case. First, *Johnson* must have had standing to bring this claim. In other words, *Johnson* must have suffered  (1) an "injury in fact" that is  (2)  "fairly traceable" to the state court's commitment order that challenges,  and   (3) that is "likely [to be] redressed by a favorable decision.' See *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs*. (TOC), Inc., 528 U.S. 167, 180-81 (2000).

100.     *Johnson* may nonetheless have standing if the state court's SVPA commitment order still carried with it "some concrete and continuing injury other than now-ended incarceration." *Spencer,* 523 U.S. at 7, 118 S.Ct. 978. The Supreme Court has applied this doctrine

in its mootness cases, recognizing that collateral consequences may be "adequate to meet Article III's injury-in-fact requirement" to avoid mootness. *Id.* At 14, 118 S.Ct.978. For instance, some disabilities that a defendant suffers because of his conviction are sufficient to keep his appeal of the conviction from becoming moot, even if his sentence expires during the appeal. *See North Carolina v. Rice,* 404 U.S. 244, 247, 92 S.ct. 402, 30 L.Ed.2d 413 (1971) (per curiam). There is no conceptual reason why the collateral consequences doctrine should not extend to standing in a case like *Johnson's.*

101.    Continuing effects of *Johnson's* commitment may be significant enough to satisfy the injury in fact requirement for standing, and a decision invalidating the state court's order would remedy those continuing effects.    There are, however, other injuries that *Johnson* suffers or has suffered that might be consequences of the state court's determination that he is a sexually violent predator: (1) the voluntary confinement term he was serving when he filed his habeas petition; (2) the possibility that he will be involuntarily confined in the future; and (3) there reputational harm associated with the SVPA determination. Lets consider each of these in turn.

*CURRENT VOLUNTARY CONFINEMENT*

102.    When Johnson's initial SVPA term expired in 2002, the state petition to recommit him for a second two-year term; he was recommitted on that moot 2002-2004 petition, and before there was a trial on the 2002-2004 moot recommitment petition the state had filed a 2004-2006 recommitment, and before there was a trial on the 2004-2006 recommitment petition, the state filed a 2006-2008 recommitment petition which was then consolidated, and Johnson was eventually convicted/commitment on these two (2004-2006 and 2006-2008) petitions without a trial. As a result, Johnson was and still is confined at now Coalinga State Hospital(CSH) when he filed his habeas petition. But while his confinement was clearly an injury in fact, it is also clear that it is "tracable to the challenged action" of the state. *Friends of the Earth,* 528 U.S. at 180, 120 S.Ct. 693.

*POSSIBILITY OF FUTURE CONFINEMENT*                                                1

103.    *Johnson* has standing because he is now in the future with a indeterminate

involuntarily confined sentence/commitment without a trial on the 2004-2006 and 2006-2008 recommitment petitions. *Johnson* has been involuntarily recommitted by the state courts under successive SVPA petitions, his initial SVPA confinement has served as a prerequisite for his second petition, the second petition was a prerequisite for the third, and so forth. Thus, all future petitions to recommit *Johnson* could be traced back, through preceding petitions, to his initial confinement.

104.    *Johnson's* case does involve such a chain, the state petitions to recommit him, the prerequisite for the petition are current involuntary confinement. His current confinement is traceable to the state court's SVPA confinement order, the Court can trace any and all future confinement petitions back to the order. The action [is] in its duration too short to be fully litigated prior to the cessation or expiration. *Johnson's* claims also satisfy the second "capable of repetition" component of this analysis because of the courts and prosecutors delay , and the fact that the petition had already expired becoming moot subjecting *Johnson* to a second SVPA commitment proceeding in which he argues is just as unconstitutional as the 2002-2004 moot petition.    *Johnson's* claims "evade review" because a delayed two –year commitment team without being committed under the SVPA is/was "too short to be *fully litigated* prior to ... [its] expiration." *Id. (emphasis added); see also Sibron v. New York,* 392 U.S. 40, 52-53, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) ("Many deep and abiding constitutional problems are encountered primarily at a level of ... offenses which carry only short sentences.  We do not believe that the Constitution contemplates that people deprived of constitutional rights at this level should be left utterly remediless and defenseless against repetitions of unconstitutional conduct.") *Hubbart v. Knapp.*378 F.3d 773,(C.A.9(Cal.)2004).

## *REPUTATIONAL HARM*

105.    There is little doubt that *Johnson's*    adjudication as a sexually violent predator carries with consequences to his reputation. Although it is not clear how much of the harm is attributable to the SVPA designation as such—as opposed to the sexual crime convictions that Provided the basis for the designation(*which is currently on appeal in the Ninth Circuit of*

1  *Appeals)* –the designation itself is an injury.

2      106.    To consider the merits of *Johnson*'s petition the Court must determine "whether it

3  presents a case or controversy under Article III of the Constitution."*Jackson v. Cal. Dep't of

4  Mental Health*, 399 F.3d 1069, 1071 (9th Cir. 2004); *see also Caswell  v. Calderon,* 363 F. 3d 832,

5  836 (9th Cir. 2004) ("A case is moot if it does not satisfy the case-or- controversy requirement of

6  Article III, s 2, of the Constitution.").*Carty v.Nelson*, 426 F.3d 1064(C.A.9(Cal.)2005)

7      107.    On page 15 of the sixth district of appeals court, they ruled in pertinent part :

8      "… "We see no likelihood that the situation of which defendant now complains will be

9  repeated on a statewide basis. If such repetition does occur, we may decide at some future time

10   that moot trials in SVP cases raise issues of statewide importance that are capable of repetition yet

11  evade review.

12      108.    The Ninth Circuit Court of Appeals stated in it's ruling:

13          "We hold that Hubbart's habeas petition is not moot because his claims are capable

14          of  repetition yet evading review . This well established exception to mootness

15          applies when "(1) the challenged action [is] in its duration too short to be fully

16          litigated prior to cessation or expiration, and   (2)  there [is] a reasonable

17          expectation that the same complaining party [will] be subject to the same action

18          again." *Id.* At 17, 118 S.Ct. 978 (citation and internal quotation marks omitted).

19      109.    Hubbart's claims satisfy the second "capable of repetition" component of this

20  analysis because he has already been subject to a second SVPA commitment proceeding, *778

21  which he argues was just as unconstitutional as the first.   Hubbart's claims "evade review"

22  because a two-year commitment under the SVPA is too short to be *fully litigated* prior to …[its]

23  expiration." *Id (emphasis added);* 1889, 20 L.Ed.2d 917 (1968) ("Many deep and abiding

24  constitutional problems are encountered primarily at a level of … offenses which carry only short

25  sentences. We do not believe that the Constitution contemplates that people deprived of

26  constitutional rights at this level should be left utterly remediless and defenseless against

27  repetitions of unconstitutional conduct.").

28

110.    A claim evades review if "the underlying action is almost certain to run its course before either this court or the Supreme Court can give the case full consideration." *Biodiversity Legal Found v. Badgley,* 309 F.3d 1166, 1173 (9th Cir.2002)   (citation and quotation marks omitted).   There is no dispute that neither this court nor the Supreme Court has given Hubbart's case full consideration.  *See id.* at 1173-74 ("[A]n issue that 'evades review' is one which, in its regular course, resolves itself without allowing sufficient time for appellate review.");  *see also Brown v. Allen,* 344 U.S. 443, 456, 73 S.Ct. 397, 97 L.Ed. 469 (1953) ("[T]he denial of certiorari imports no expression of opinion upon the merits of a case.") (quotation marks and citation omitted).   While it is true that he has had his day in California's appellate courts, Hubbart has yet to "fully litigate" his habeas claims in federal court.

111.    In *Alaska Ctr. for the Env't v. United States Forest Serv.,* 189 F.3d 851, 855 (9th Cir.1999), we held that a challenge to a National Forest Service permit could not be fully litigated within two years.  We now hold that it is "almost certain" that a state detainee under California's civil commitment scheme for sexually violent predators will be unable to exhaust state remedies and "fully litigate" a habeas petition in federal courts within two years. *See Biodiversity Legal Found.,* 309 F.3d at 1173-74; *cf. First Nat'l Bank v. Bellotti,* 435 U.S. 765, 774, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978) (finding that 18 months is too short); *Spencer,* 523 U.S. at 17, 118 S.Ct. 978 (finding that three years provides enough time for a state prisoner to litigate federal habeas claims).

112.    Furthermore, we reject the suggestion that Hubbart's petition has not evaded review because the California courts have already ruled on his claims.  We hold that for purposes of determining mootness in connection with California's repeating pattern of two-year commitments under the SVPA, a federal constitutional claim evades review if the challenged action expires before a federal appellate court has the opportunity to fully consider the allegation.  *See Biodiversity Legal Found.,* 309 F.3d at 1173 (holding that "full litigation" includes review by "this court" or the Supreme Court); *see also Brown,* 344 U.S. at 463-65, 73 S.Ct. 397 (holding that habeas litigation filed by state prisoners includes review by federal judges).

## VIII.  VACATUR

113.    When a case becomes moot on appeal, *as here in Johnson's case,* the "established practice" is to reverse or vacate the decision below with a direction to dismiss. *Arizonans for Official English v. Arizona,* 520 U.S. 43, 71, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (citing *United States v. Munsingwear, Inc.,* 340 U.S. 36, 39, 71 S.Ct. 104, 95 L.Ed. 36 (1950)). Vacatur is such a situation "eliminate[es] a judgment the loser *(Mr.Johnson)* was stopped from opposing on direct review." *Arizonans for Official English,* 520 U.S. at 71, 117 S.Ct. 1055.  Without vacatur, the lower court's judgment, "which in the statuory scheme was only preliminary," would escape meaningful appellate review thanks to the "happenstance" of mootness. *United States v. Munsingwear, Inc.,* 340 U.S. 36, 39, 71 S.Ct. 104, 95 L.Ed. 36 (1950).  Under the *"Munsingwear* rule," vacatur is generally "automatic" in the Ninth Circuit when a case becomes moot on appeal *(such as Mr.Johnson's case)* . *Publ. Util. Comm'n v. FERC,* 100 F.3d 1451, 1461(9th Cir. 1996).

114.    When *Mr. Johnson* filed his writ of mandamus to the sixth district court of appeals on the consolidation issue (*Litmon/Johnson v. Superior Court 21 Cal.Rptr.3d 21,123 Cal.App.4[th] 1156(CalApp. 6 Dist 2004),* the appellate court placed a stay on all the proceedings in the lower court causing the petition to become moot while waiting their decision. Petition asserts that that stay that was ordered is appealable because it placed Petitioner "effectively out of court, and denied him an appeal" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 10, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).  In *Moses H. Cone,* The Supreme Court held that an order staying litigation in federal court pending the resolution of a case in state court that would have res judicata effect on federal case placed the plaintiff effectively out of court. Id. *Moses H. Cone* applies whenever there is a possibility that proceedings in another court could moot a suit or an issue even if there is no guarantee that they will do so. *Lockyer v. Mirant Corp.,* 398 F.3d 1098, 1102 (9th Cir.2005). However, the majority of circuits that have considered this question have found jurisdiction. See *Hines v. D'Artois,* 531 F.2d 726, 731 (5th Cir.1976);  *AM.Mfrs. Mut. Inc. Co. v. Edward D. Stone, Jr. & Assocs.,* 723 F.2d 1519 (11th Cir. (1984); *Kahn v. Gen Motors Corp.,* 889 F.2d 1078, 1080 (Fed. Cir.1989); *Johnson & Johnson, Inc. v. Wallace A. Erickson & Co.,* 627 F.2d 57, 62 (7th Cir.1980); see also *Rojas-Hernandez v. Puerto Rico Elec. Power Auth.,*

1  925 F.2d 492, 495 (1st Cir. 1991) treating a denial of a motion to set a trial date as a stay and
2  finding jurisdiction due to the indefinite delay); *Discon Inc. v. NYNEX Corp.,* 4 F.3d 130, 134 (2d
3  Cir. 1993) (finding jurisdiction under the collateral order doctrine because the stay imposed an
4  indefinite delay placing the plaintiff effectively out of court); but see *Marcus v. Twp. of Abigton,*
5  38 F.3d 1367, 1370 (3d Cir.1994); *Crystal Clear Commc'ns v. Sw. Bell Tel Co.,* 415 *724 F.3d
6  1171 (10th Cir.2005) The Court in *United States v. Howard* 429 F.3d 843 agree with the majority
7  position that lengthy and indefinite stays place a plaintiff effectively out of court. Such an
8  indefinite delay amounts to a refusal to refusal to proceed to a disposition on the merits. *Disco Inc.*
9  4 F.3d at 134.   Even if litigation may eventually resume, such stays create a "danger of denying
10 justice by delay." *Am. Mfrs.* 43 F.2d at 1524. Delay "inherently increases the risk that witnesses'
11 Memories will fade and evidence will become stale." *Pagtalunan v. Galaza,* 291 F.3d 639, 643
12 (9th Cir.2002). Additionally, in some cases plaintiffs may go out of business awaiting recovery or
13 face irreparable harm during the time that their suits are on ice. The stay in this case not only went
14 over Petitioners two year petition term and over a year from that term, and then denied Petitioners
15 Writ of Mandamus to dismiss the petition because of it's mootness before trial.

16    115.    In *U.S. Bancorp Mortg. Co. v. Bonner Mall Partnership,* They also agree that
17 vacatur must be granted where mootness results from the unilateral action of the party who
18 prevailed in the lower court. Such as what has transpired in ***Johnson's case*** where the court's
19 granting the prosecutions consolidation motion that was later reversed by the appeals court caused
20 the delay causing the petition to become moot. The principal condition to which we have looked is
21 whether the party seeking relief from the judgment, below caused the mootness by voluntary
22 action. See *Hamburg-Amerikanische, supra,* 239 U.S., at 478, 36 S.Ct., at 217 (remanding a moot
23 case for dismissal because "the ends of justice exact. [513 U.S. 25] that judgment below should
24 not be permitted to stand when without any fault of the [petitioner] there is no power to review it
25 upon the merits"); *Heitmuller v.Stokes,* 256 U.S., at 362, 41 S.Ct., at 523-524 (remanding for
26 dismissal because "without fault of the plaintiff in error, the defendant in error, after the
27 proceedings below, … caus[ed] the case to become moot")   The same is true when the mootness
28 result from unilateral action of the party who here prevailed be below. *See Walling,* 321 U.S., at

1  675, 64 S.Ct. , at 828; *Heitmuller, supra,* 256 U.S., at 362, 41 S.Ct., at 523-524.

2      116.    It is petitioner's burden, as the party seeking relief from the status quo of the
3  appellate judgment, to demonstrate not merely equivalent responsibility for the mootness, but
4  equitable entitlement to the extraordinary remedy of vacatur.

5      117.    Petitioner is and has demonstrated his equitable entitlement to vacatur. *U.S.*
6  *Bancorp Mortgage Co. v. Bonner Mall Partnership,* 513 U.S. 18, 26, 115 S.Ct. 386, 130 L.ed.2d
7  233n(1994).   The present case is one in which the court and the prosecution's own actions
8  rendered the case and appeal moot. Petitioner objected to their proceedings, and did not fail to
9  appeal.

10                              **CONCLUSION**

11      118.    Having determined that the case/appeal is moot, the Court must decide whether
12  they should vacate the lower courts judgment. Although it is general practice to vacate the
13  judgment below whenever a case becomes moot. See *United States v. Munsingwear, Inc.,* 340
14  U.S. 36, 39, 71 S.Ct. 104, 106-07, 95 L.Ed. 36 (1950), more recent cases hold that the decision to
15  vacate is not to be made mechanically, but should be based on equitable consideration. See *U.S.*
16  *Bancorp Mortgage Co. v. Bonner Mall Partnership,*513 U.S. 18, ----, 115 S.Ct. 386, 391, 130
17  L.Ed.2d 233 (1994);  *Dilley v. Gunn,* 64 F.3d 1365, 1370 (9th Cir. 1995). "The principal
18  condition to which the Court have looked is whether the party seeking relief from the judgment
19  below caused the mootness by voluntary action." *Bonner Mall,* 513 U.S. at ----, 115 S.Ct. at 391.

20      119.    Petitioner has sufficiently and significantly previously applied and cited cases in his
21  arguments, and in sections I; II,A,B,1; III,1; IV; V; VI; VII; VIII, that he thinks are closely
22  factually examples of errors he believes occurred in this case.

23      120.    Wherefore, as there is/are/was no legal basis to proceed on this moot petition,
24  Petitioner prays that the Court issues petition for writ of habeas corpus and other such relief to
25  which Petitioner may be entitled. I Joseph Johnson, Jr., declare under the penalty of perjury that
26  the foregoing is true and correct.

27          Executed on    **June  10** 2008, at Coalinga State Hospital, City of Coalinga,
28  Fresno County, CA. 93210.

-36-

Joseph Johnson, Jr.

PETITIONER/PRO SE.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT  "A"**



CALIFORNIA DEPARTMENT OF
# Mental Health

Atascadero State Hospital
P.O. Box 7004, Atascadero, CA 93423-7004
(805) 468-3192  Fax: (805) 468-2582

April 10, 2002

George Kennedy, District Attorney
Office of the District Attorney
County of Santa Clara
70 W. Hedding Street, 5th Floor
San Jose, California 95110-1768

PATIENT NAME:                                      JOHNSON, Joseph Jr.
STATE HOSPITAL NUMBER:                  050302-9
SUPERIOR COURT CASE NUMBER:      210431
DATE TERM OF COMMITMENT EXPIRES:   May 24, 2002

This is to notify you that the Department of Mental Health recommends that a petition for extension of commitment be filed in the case of the above-named patient, an individual committed as a Sexually Violent Predator under Welfare and Institutions Code Section 6604. The patient's term of commitment expires on the date indicated above.

State hospital treatment staff believes that this patient is a person who continues to meet all the legal and clinical criteria which led to the original civil commitment and therefore qualifies for extension of commitment under provisions of Welfare and Institutions Code Section 6604.

Enclosed for your information are copies of two recent Welfare and Institution Code Section 6600 Sexual Violent Predator Re-Commitment Evaluations, dated February 11, 2002 and February 22, 2002.

We respectfully request that your office promptly advise the state hospital of your decision regarding SVP commitment extension. Timely information regarding extension is needed by the state hospital to make appropriate plans for the patient, and to assure that no civilly committed patient is kept in custody beyond the period ordered by the court. Please contact Robert S. Knapp, M.D., Medical Director, at (805) 468-2205, if further information or assistance is needed.

Sincerely,

ROBERT S. KNAPP, M.D.
Medical Director, Atascadero State Hospital

RSK: sc

Enclosure

c:    Superior Court Judge, County of Commitment
      Public Defender/Defense Attorney of Record
      ConRep Program Director - South Bay Conditional Release Program
      CDC Parole and Community Services Division
      Police Chief/Sheriff of County of Commitment/Residence/Potential Release

Confidential

Patient's Copy

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT "B"**



**CALIFORNIA DEPARTMENT OF**
# Mental Health

1600 9th Street, Sacramento, CA 95814
((916) 653-2088

September 26, 2006

Ralph W. Benitez
Office of the Public Defender
County of Santa Clara
120 West Mission Street
San Jose, CA 95110

Dear Mr. Benitez:

We have received your letter dated August 25, 2006 regarding Joseph Johnson. In that letter you demanded that the Department of Mental Health (DMH) file a Writ of Habeas Corpus pursuant to Welfare and Institutions Code (WIC) Section 7250. You also cited WIC 6604(f) that states that when the DMH has reason to believe that the person committed as a sexually violent predator is no longer a sexually violent predator, the DMH shall seek judicial review. To support your position, you submitted two evaluations and a letter from the Medical Director at Atascadero State Hospital, Dr. David Fennell.

Please be advised that Dr. Fennell, as Medical Director of Atascadero State Hospital (ASH), can represent and speak for ASH in that capacity, but does not represent the Department's opinion nor does he speak for the Department when the statute calls for action by the "Department" or the "Director of the Department." The final decision on whether or not to proceed, and how to proceed, on any case, when the statute calls for action or decision by the Department must be made by the Director of DMH. In addition, the letter from Dr. Fennell only states that he cannot find anything to disagree with, medically, in the evaluation reports. This does not mean that the Department has concluded, or must conclude, that your client is no longer a Sexually Violent Predator. It is for these reasons that DMH will not be filing a Writ of Habeas Corpus.

Sincerely,

SYLVIA BLOUNT
Chief
Sex Offender Commitment Program

cc  James Cahan

Court of Appeal, Sixth Appellate District - No. H028873
**S135199**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

JOSEPH JOHNSON, Petitioner,

v.

SANTA CLARA COUNTY SUPERIOR COURT, Respondent;

THE PEOPLE, Real Party in Interest.

Petition for review DENIED.

**SUPREME COURT**
**FILED**

SEP - 7 2005

**Frederick K. Ohlrich Clerk**

DEPUTY

GEORGE,
**Chief Justice**

Court of Appeal, Sixth Appellate District - No. H029316
**S158324**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

THE PEOPLE, Plaintiff and Respondent,

v.

JOSEPH JOHNSON, Defendant and Appellant.

The petition for review is denied.

SUPREME COURT
# FILED

JAN **2 3** 2008

Frederick K. Ohlrich Clerk

Deputy

GEORGE

Chief Justice

## PROOF OF SERVICE BY MAIL

I,   Joseph Johnson, Jr.,            , declare:

I am, and was at the time of the service hereinafter mentioned, over the age of 18 years and ~~was~~ a party to the above-entitled cause. My (residence or business) address is

CO-580-1; P.O. Box 5003; Coalinga,CA 93210

and I am a resident of, or employed in,   Fresno            County, California.

On the date of _____   **June 10, 2008** _____ I served the

PETITION FOR WRIT OF HABEAS CORPUS

**FIRST AMENDED**

(exact title of document(s) served)

by depositing a copy of the document(s) in the United States mail at

(location) Coalinga State Hospital, (city)  Coalinga            ,

Fresno            County, California in a sealed envelope, with postage fully prepaid, addressed as follows: (In the space below insert the name and mailing address of each person you are serving with these documents. If the person is a party to the action or an attorney for a party, indicate that with the address).

United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

At the time of mailing there was regular delivery of United States mail between the place of deposit and the place of address.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:    **June 10, 2008**

_____
(Signature of person mailing)

Joseph Johnson, Jr.,
(Name of person mailing, typed or printed)

Joseph Johnson, Jr.
P.O. Box 5003
Coalinga, CA 93210

BUSINESS REPLY MAIL
FIRST-CLASS MAIL    PERMIT NO. 12815    WASHINGTON DC

POSTAGE WILL BE PAID BY UNITED STATES COURTS

US DISTRICT COURT
450 GOLDEN GATE AVE
PO BOX 36060
SAN FRANCISCO CA 94102-9680

NO POSTAGE
NECESSARY
IF MAILED
IN THE
UNITED STATES

